UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 2:25-cv-10459-SSS-BFM | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Enrique Mayoral v. Todd Lyons et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER (1) GRANTING PETITIONER'S TEMPORARY RESTRAINING ORDER [DKT. NO. 6]; (2) DENYING AS MOOT APPLICATION FOR OSC [DKT. NO. 4]; AND (3) ISSUING ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

On October 30, 2025, Petitioner Enrique Mayoral filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"), challenging the lawfulness of his classification for detention by U.S. Immigration and Customs Enforcement ("ICE") and seeking to release from custody unless he is provided with a bond hearing pursuant to 8 U.S.C. § 1226(a).[1]  [Dkt. No. 1].  On November 3, 2025, Petitioner filed an ex parte application for a temporary restraining order ("Application"), requesting the same relief as in the Petition.  [Dkt. No. 6].  Respondents Todd Lyons and Ernesto Santacruz, Jr. oppose the Application.  [Dkt. No. 9].  For the reasons stated below, the Application is **GRANTED**.

---

[1] Petitioner filed a request for an order to show cause alongside his Petition.  [Dkt. Nos. 1-1, 4].  Given that Petitioner requests the same relief as in the Application, the Court **DENIES** the request as **MOOT**.

## II.   FACTUAL BACKGROUND

Petitioner alleges the following:

Petitioner is a foreign national currently in federal custody in Adelanto, California.  [App. at 9].  On August 27, 2025, ICE arrested and charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone present without admission in the United States.  [*Id.*]  On October 8, 2025, Petitioner attended a hearing where the immigration judge advised him that he was not entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) and the Board of Immigration Appeals' September 5, 2025, decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  [*Id.*]

Petitioner has lived in Los Angeles, California, for over ten years and has no criminal record.  [*Id.*]  Petitioner was provided with a U.S. Department of Homeland Security ("DHS") Form I-862 Notice to Appear, in which Petitioner is identified as "an [noncitizen]² present in the United States who has not been admitted or paroled."  [App., Ex. B].

---

² This Order uses the term "noncitizen" in place of "alien".  The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice.  *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).  Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing."  *Chicago Manual of Style Online* 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html.  As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'"  *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)).  Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice.  *See Alien* and *Noncitizen*, *American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

### III.    LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).[3]

For the Court to grant an application for a TRO, the moving party must show: (1) he are "likely to succeed on the merits" of the underlying claim; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

///

///

///

---

[3] Ordinarily, the "circumstances justifying the issuance of an ex parte [temporary restraining] order are extremely limited." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). To be entitled to an ex parte temporary restraining order, Petitioner must set out "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). However, because Petitioner has provided Respondents with notice of this ex parte filing, and Respondents have filed an Opposition, the Court will proceed.

## IV.   DISCUSSION[4]

### A.   The Court Has Jurisdiction

Respondents argue 8 U.S.C. § 1252(g) and (b)(9) preclude this Court from reviewing Petitioner's claims. [Opp. at 11-15]. The Court addresses each argument in turn.

#### 1.   Section 1252(b)(9)

Respondents cite to § 1252(b)(9) as channeling "[j]udicial review of all questions of law . . . including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove a [noncitizen] from the United States" to the appropriate federal court of appeals. [Opp. at 13 (citing § 1252(b)(9)). However, the Court questions the applicability of § 1252(b)(9) because Petitioner does not have a final removal order. [*See* App., Ex. A]. Nonetheless, the Court addresses Respondents' arguments. Respondents frame Petitioner's relief as a challenge to the government's decision to detain Petitioner. [Opp. at 14–15]. As such, Respondents cite *Jennings v. Rodriguez*, 583 U.S. 281 (2018), to underscore that Petitioner's claims fall under the scope of § 1252(b)(9). [*Id.*] The Court disagrees with Respondents' conclusion.

As in *Jennings*, the Court finds Petitioner's claims are not encompassed in § 1252(b)(9) because he "[is] not asking for review of an order of removal; [he is] not challenging the decision to detain [him] in the first place or to seek removal; and [he is] not even challenging any part of the process by which [his] removability will be determined." 583 U.S. at 294–95. Therefore, "[u]nder these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Id.* at 294–95.

#### 2.   Section 1252(g)

Respondents argue § 1252(g) bars this Court from reviewing Petitioner's claims. [Opp. at 11–12].

---

[4] Petitioner presents arguments as to why prudential exhaustion should be waived, but Respondents failed to make any arguments regarding exhaustion. Therefore, the Court does not address Petitioner's arguments. *See Aramark Facility Servs. v. Serv. Emps. Int'l Union, Loc. 1877*, 530 F.3d 817, 824 n. 2 (9th Cir. 2008) (failing to adequately brief arguments waives them).

Section 1252(g), unless other laws provide jurisdiction, strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." § 1252(g).  However, as stated, Petitioner asserts that his claims challenge whether he is subject to mandatory detention during the pendency of removal proceedings and argues that his due process rights are being violated due to the failure to provide a bond hearing.  *See* App.  Petitioner is not challenging the decision to commence proceedings, adjudicate cases, or execute removal orders.

The Supreme Court previously characterized § 1252(g) as a narrow provision, applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original).  In doing so, the Supreme Court found it "implausible that the mention of *three discrete events* along the road to deportation was a shorthand way of referring to *all claims arising from* deportation proceedings."  *Id.* (emphasis added); *see also Jennings*, 583 U.S. at 294 ("We did not interpret [section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.") (citing *Reno*, 525 U.S. at 482).

Since Petitioner's bond denial claims do not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that § 1252(g) does not present a jurisdictional bar to judicial review.

\* \* \*

Based on the aforementioned, the Court finds it has jurisdiction over Petitioner's claims.

### B.   Petitioner Has Established a Likelihood of Success on the Merits

The first *Winter* factor is "the most important factor" in assessing whether injunctive relief should be granted.  *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).  Here, the Court finds Petitioner has established a likelihood of success on the merits.

1. **Whether Petitioner is detained pursuant to 8 U.S.C. § 1225 or § 1226**

As a threshold matter, the Court must first determine whether Petitioner's detention is governed by § 1225(b)(2)(A) and subject to mandatory detention, or § 1226(a) and subject to detention on a discretionary basis. Petitioner argues his detention is governed by § 1226(a), and he is unlawfully subject to mandatory detention, without a bond hearing under § 1225(b)(2). [App. at 10–15]. Respondents disagree and contend Petitioner is an "applicant[] for admission" under § 1225(a), and therefore, are subject to mandatory detention under § 1225(b)(2) as noncitizens "seeking admission[.]" [Opp. at 15–17].

Section 1225 provides that "in the case of an [noncitizen] who is an applicant for admission, if the examining immigration officer determines that an [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained." § 1225(b)(2)(A) (emphasis added). Except for a limited exception not applicable here, detention under § 1225 is mandatory. *Jennings*, 583 U.S. at 297. Additionally, under § 1255, individuals are not entitled to a bond hearing. *Id.* ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

As the Supreme Court explained, while "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 288–89 (emphasis added); *see also id.* at 288 (explaining that, "*once inside* the United States . . . *an [noncitizen] present in the country* may still be removed" under "Section 1226") (emphasis added). Section 1226(a) provides that, pursuant to a warrant issued by the Attorney General, a noncitizen who is "arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States" may be detained or released on bond. Accordingly, "[f]ederal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 1236.1(d)(1)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker.").

In addition to the plain text of the statutes, Respondents urge the Court to follow the BIA ruling in *Matter of Yajure Hurtado*. [Opp. at 16–17]. The BIA

concluded that a noncitizen in the United States, who was not admitted, continues "seeking admission" under § 1225 because the individual "provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission.'" *Yajure Hurtado*, 29 I&N Dec. at 221.

In stride with courts in this District and across the country[5], the Court disagrees with Respondents' and the BIA's novel interpretation of § 1225 for three reasons.

First, the Court should not defer to an agency's interpretation of the law simply because of an ambiguous statute. *Loper Bright Enters. v. Raimando*, 603 U.S. 369, 412–413 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted . . . courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, based upon the statutory context, scheme, and text of § 1225, the Court finds it difficult to find that an individual is "seeking admission" or an "applicant for admission" when the noncitizen never attempted to do so. Especially in this instance, where Petitioner has been residing in California for over ten years. [App. at 9].

Third, the BIA's reading of § 1225(b) renders superfluous the Laken Riley Act, amendments to § 1226(c), which added in part, subsection 1226(c)(1)(E).

---

[5] *See Santiago Flores v. Noem,* Case No. 5:25-cv-2490-AB-AJR (C.D. Cal. Sept. 29, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304-CAS-BFM, 025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *5–9 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4–9 (D. Mass. July 24, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *7–9 (E.D. Mich. Sept. 9, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025).

*Yajure Hurtado*, 29 I&N Dec. at 222.  The amendments applied mandatory detention to noncitizens who are (1) inadmissible because they are present without admission or parole, procured admission into the United States because of misrepresentation, or lacked proper documentation; *and* (2) have been charged with, convicted of, or arrested for certain enumerated crimes.  Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (emphasis added).  As noted by other courts, "'If § 1225(b)(2) already mandated detention of any [noncitizen] who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2).'" *Lopez-Campos v. Raycraft*, 2025 WL 2496379 at *8 (E.D. Mich. Aug. 29, 2025) (quoting *Maldonado v. Olsen*, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025)).  If "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework." *Id.*  For these reasons, the Court declines to adopt the reasoning in *Matter of Yajure Hurtado*.

As acknowledged in *Jennings*, § 1226 applies to "certain [noncitizens] already in the country," as opposed to § 1225(b), which "applies primarily to [noncitizens] seeking entry into the United States[.]"  583 U.S. at 281, 297.  Here, the Petitioner has been residing in California for over ten years.  [App. at 9].  Further, on the Notice to Appear, DHS identified Petitioner as "an [noncitizen] present in the United States who has not been admitted or paroled[,]" not as "an arriving [noncitizen][.]"  [App., Ex. B].  Nothing in the record demonstrates that Petitioner took affirmative action, such as arriving at a port of entry, formally applying for admission, or changing his status.  Accordingly, based on the record before the Court and the plain text of the statute, Petitioner is not "seeking admission" or is an "applicant for admission" under § 1225.  Thus, the Court concludes § 1225(b) does not apply to individuals like Petitioner, who are "already in this country," *Jennings*, 583 U.S. at 289, and thus Petitioner may only be subject to detention as a matter of discretion under § 1226(a).

### 2. Procedural Due Process

Having concluded Petitioner's detention is discretionary and not mandatory, the Court next addresses whether detention without a bond hearing violates Petitioner's due process rights.

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings.") (citation omitted)).

The Ninth Circuit has applied the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to due process challenges to removal proceedings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Whether administrative procedures are sufficient under the Fifth Amendment requires consideration of: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews*, 424 U.S. at 335. As explained below, applying the *Mathews v. Eldridge* balancing test, the Court concludes that Petitioner's detention without a bond hearing violates due process.

### a.  Private Interest

Petitioner has a significant private interest in not being detained without due process of law. A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner is requesting that DHS adhere to existing procedures and hold individualized bond hearings, as he is entitled to under § 1226(a). [App. at 5–8]. At a minimum, § 1226(a) requires a valid exercise of DHS's discretion in making a detention determination. *See* 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an [noncitizen] . . . provided that the [noncitizen] must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."). Here, the record contains no indication that DHS exercised any discretion in detaining the Petitioner. Indeed, under § 1226(a), DHS has broad discretion in exercising its detention authority, which is not subject to second-

guessing by this Court. The problem is that Respondents have not offered any explanation for Petitioner's detention other than that it is mandatory, not discretionary. Accordingly, Petitioner has no recourse to appeal DHS's detention decision to an immigration judge, who then conducts their own assessment of Petitioner's flight risk and dangerousness, among other factors. *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge . . . may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the [noncitizen] or the Service.").

Accordingly, Petitioner has established that he has a private interest in his liberty in advocating for a bond hearing pursuant to § 1226(a), of which he has been completely deprived.

### b.     Risk of Erroneous Deprivation

With respect to the second factor, the Court concludes the risk of erroneous deprivation is high. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 690). Petitioner has not received a bond hearing. Thus, the risk of erroneous deprivation of liberty is high because neither Respondents nor Petitioner has had an opportunity to determine whether there is a valid basis for Petitioner's detention. *See Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025).

### c.     Government's Interest

Detention under § 1226(a) advances legitimate government purposes such as "ensuring the appearance of [noncitizens] at future immigration proceedings" and preventing danger to the community." *Zadvydas*, 533 U.S. at 690. However, nothing in the record suggests Petitioner is a flight risk or a danger to the community. [*See* App. at 9, Exs. A–C]. Further, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Doe v. Becerra*, 25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). Accordingly, the burden of affording Petitioner a bond hearing does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

* * *

Having found that Petitioner has a liberty interest and determined that due process requires Petitioner to receive a hearing to determine whether detention is warranted, the Court finds that Petitioner has established a likelihood of success on the merits.

### C. Petitioner Is Likely to Suffer Irreparable Harm Absent Injunctive Relief

Petitioner has demonstrated a likelihood of irreparable harm absent injunctive relief. Respondents assert that Petitioner is subject to mandatory detention under § 1225(b)(2), a provision that does not apply to Petitioner nor provides a review of his detention. [Opp. at 15–20]. Respondents' application of § 1225 to Petitioner raises constitutional concerns "that irreparable harm is *likely*, not just possible" in the absence of . . . injunctive relief." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Accordingly, the Court finds that Petitioner has clearly shown risk of irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez*, 715 F.3d at 1144–45 (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

### D. The Balance of Hardships and Public Interest Tips Sharply in Petitioner's Favor

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Respondents argue they have a "compelling interest in the steady enforcement of its immigration laws." [Opp. at 20 (citing cases)]. The Court agrees. Nonetheless, the Court finds that the balance of equities and public interest factors favors Petitioner. Given that injunctive relief would only require what is required under § 1226, the Court finds the harm to Respondents is minimal. *See Rodriguez*, 715 F.3d at 1145 (finding the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns"). Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights, . . . because all citizens have a stake in upholding the Constitution." *Doe v. Horne*, 115 F.4th 1083, 1098–99 (9th Cir. 2024) (citation modified). For these

reasons, the Court concludes that the balance of hardships and public interest tips in favor of Petitioner.

* * *

Based on Petitioner's showing of likelihood of success on the merits and irreparable harm, the minimal harm to Respondents, and the public's interest in upholding the Constitution, the Court **GRANTS** Petitioner's Application.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Application and **ENJOINS** Respondents from:

- Detaining Petitioner unless he is provided an individualized bond hearing before an immigration judge pursuant to § 1226(a) within 7 days of the date of this Order; and
- Transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court and pending final resolution of this litigation.

The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue.  Respondents shall file any response by **November 12, 2025**, and Petitioner shall file a response no later than **November 17, 2025**.

The Court sets a hearing via Zoom for **November 21, 2025, at 1:00 p.m.** to determine whether a preliminary injunction should be issued.[6]

**IT IS SO ORDERED**.

---

[6] Parties would ordinarily be entitled to a hearing on November 19, 2025, regarding the expiration of the TRO.  However, the Court is unavailable, and for good cause, the Court sets the hearing for the earliest available date, November 21, 2025.  The Court refers the parties to Judge Sykes' website for details regarding hearings via Zoom: https://www.cacd.uscourts.gov/honorable-sunshine-s-sykes.